[Civ. No. 1165.    Third Appellate District.—March 17, 1914.]

ANNIE BOND, Respondent, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

Street Railways—Collision Between Cars at Crossing—Evidence That Injured Person was Passenger.—Where, in an action against a street railway company to recover for the death of a person caused by a collision between its cars at a crossing, one witness testifies that at the time of the accident he saw several persons fall from one of the cars to the ground, and another witness testifies that, observing the accident and going to the spot where several

individuals were lying, he picked up one whom he identified as the deceased, the necessary inference is that the deceased was a passenger at the time of the collision.

Id.—Passenger on Street-car—Presumption That Person is.—A person riding on a street-car is presumed to be a passenger.

Id.—Collision Between Cars—Presumption of Negligence.—Where two street-cars collide at a crossing and a passenger on one of them is injured, a presumption of negligence is raised against the railway company, and it is for the jury' to determine whether this presumption is overcome by the explanation of the accident furnished by the company's witnesses.

Id.—Instruction to Jury—Presumption and Burden of Proof as to Negligence.—In such action it is proper to instruct the jury that if they find that the deceased was a passenger on one of the cars, and that while such passenger he received, without fault on his part, the injuries from which he subsequently died, then a presumption of negligence arises which throws upon the railway company the burden of showing that the injury was sustained without any negligence on its part, and that in the absence of such evidence, their verdict must be for the plaintiff.

Id.—Proximate Cause of Accident—Running of Women in Front of Car—Instructions.—It is proper to refuse an instruction to the jury that if they find from the evidence that the gripman of one of the colliding cars was negligent, but that in spite of such negligence the accident would not have occurred had it not been that certain women ran in front of the other car and forced it to stop in front of the approaching car, that the action of the women was the proximate cause of the accident and that the verdict should be for the defendant.

Id.—Damages for Mental Anguish—Instructions.—It is not error in such case to refuse an instruction "that no damages can be given to plaintiff for sorrow or grief or pain of mind or injury to feelings, or for the loss of the society of deceased, or for his pain or suffering or for the loss of his comfort or protection," if the court states that "sorrow and mental anguish caused by death are not elements of damage," and in other instructions emphasizes the fact that "pecuniary loss" is the measure of the damages to be recovered.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

William M. Abbott, William M. Cannon, and Kingsley Cannon, for Appellant.

Sullivan & Sullivan and Theo. J. Roche, for Respondent.

BURNETT, J.—This is an appeal from the judgment in favor of plaintiff for four thousand five hundred dollars, entered in accordance with the direction of the supreme court, and it is a companion case to No. 1180,* involving an appeal from the order of the lower court striking from the record defendant's motion for a new trial, the opinion in which is filed herewith.

It was the theory of plaintiff that her son, Gustave Fritz, was a passenger riding on the running board opposite the rear open section of an electric car proceeding southerly on a westerly Fillmore Street track, in San Francisco, on the evening of December 17, 1905, when the eastbound McAllister Street cable car collided with it at the crossing of said streets, and that by reason of said collision the said Fritz received injuries from which he died on the twenty-eighth day of December, 1905. This appears suitably in the complaint with the allegation of negligent operation of said cars by defendant.

1. The preliminary motion of respondent to dismiss the appeal, based upon reasons sufficiently appearing in said opinion in No. 1180, must be denied, on the authority of *Sala* v. *City of Pasadena*, 162 Cal. 714, [124 Pac. 539].

2. The futility of appellant's contention as to the insufficiency of the proof that the deceased was a passenger on said car at the time of the accident is fully disclosed by the quotations made by appellant from the testimony.

Charles F. O'Callaghan, an attorney at law, who was riding on the forward end of the east-bound McAllister Street car, testified as follows: "The Fillmore Street car was crowded, and there were passengers standing upon the running boards on the rear westerly portion of the open section. . . . My best recollection is that upon the Fillmore Street car at about the point where our car struck it, there were three or four persons standing on the lower running board and about the same number upon the upper running board. . . . I observed passen-

---

*After judgment in the district court of appeal, in case No. 1180, entitled Bond v. United Railroads of S. F., the supreme court, on May 15, 1914, made an order transferring the cause to the supreme court for hearing and decision.

sengers who were injured on the Fillmore Street car right after the collision. After the cars collided there were a number of people spread around over the ground. . . . With reference to the rear portion of the Fillmore Street car, the wounded passengers to whom I have referred were on the ground alongside of the car—along toward the southwest corner of Fillmore and McAllister streets, in that direction. . . . My recollection is that a number of the passengers that were standing on the westerly side of the rear section of that southerly bound Fillmore Street car fell to the street. They fell as the Fillmore Street car swerved away. . . . As these passengers were falling I observed the streets between the two cars and to which these passengers fell. I saw no human being lying on that street before passengers fell. Some of the passengers that fell got up, but three continued to lie on the street. There was a boy pretty close to the rear—that is, in about the direction that the Fillmore Street car swerved from, and over there along south of him were two other persons. These passengers fell from the car and subsequently lay upon the street. . . . These three people were not lying upon the street before I saw these passengers falling from the car. I saw a number of people fall from the car, and some of them got up, and these three did not get up.''

The foregoing was supplemented by the testimony of F. E. Winters, a policeman, who, just prior to the accident, was standing at the southeast corner of Fillmore and McAllister streets observing the movements of the colliding cars. He testified: ''I know that a young man by the name of Gustave Fritz was one of the injured. I remember the man well, both of whose feet were crushed at the ankles. I remember Fritz. I think I picked him up. Fritz was the first one I picked up.''

Under the rule as to the credit to be accorded those witnesses, only one probable inference can be drawn, and that is that Gustave Fritz was a passenger on said Fillmore Street car. Reduced to simple form, it amounts to this: One witness saw several individuals fall from the car onto a certain unoccupied space on the street. Another witness, observing the accident, immediately goes to the spot where these individuals are lying and picks up one of them whose legs are crushed, and who is identified as Gustave Fritz.

The evidence would have no greater probative value if a witness had testified that he was personally acquainted with said Fritz and saw him fall from the Fillmore Street car at the time of the accident.

In addition, it may be stated, without quoting, that the testimony of Rudolph Wolf, a fellow-passenger of Fritz on the Fillmore Street car, and of Dr. William A. Mundell, who was sitting on the extreme front of the McAllister Street car, is strongly cumulative. Having been shown to be on the car, the presumption would be that Gustave Fritz was a passenger.

"A person on a train used for carrying passengers is, in the absence of countervailing circumstances, presumed to be a passenger, and rightfully there." (*Louisville etc. Ry. Co.* v. *Thompson,* 107 Ind. 442, [57 Am. Rep. 120, 9 N. E. 357]; *People* v. *Douglass,* 87 Cal. 284, 25 Pac. 417].)

It may be, as claimed by appellant, that "the presumption, however, cannot be raised where a person is only *presumed* to have been on the car." But such is not this case. It is not a *mere presumption* that Fritz was on the car. In fact, it is no presumption at all, but a necessary inference from the facts testified to by the witnesses.

3. It cannot be said that the evidence is insufficient to support a finding of negligence. The passenger having been injured as the result of the operation of defendant's cars, the presumption of negligence would arise, as the authorities hold. It was for the jury to determine whether this presumption was overcome by the explanation of the accident furnished by appellant's witnesses. Horton, the motorman of the Fillmore Street car, testified: "The easterly bound McAllister Street car ordinarily stops at the southwesterly corner of Mc-Allister and Fillmore streets. When it did stop it stopped some distance westerly from the westerly track of Fillmore street, the track on which my car was being operated at the time of the collision. If the McAllister Street car bound in an easterly direction had stopped where it ordinarily did stop, and where it should have stopped, at the southwesterly corner of Fillmore and McAllister streets, it would have been some distance from my car. . . . I knew that prior to the time of this collision there had been a heavy drizzle. I also knew from my experience as a motorman that this drizzling caused the tracks to become slippery, especially down grade." The

rules of the company required those in charge, before crossing the tracks of intersecting lines, to "bring their cars to a full stop at the near crosswalks, see that the way is clear, and cross tracks at a greatly reduced speed," and they also provided that "when an intersection occurs at a grade, or at the foot of a grade, or if they are both on the down grade, the car on the steepest grade is to be given the right of way. But no car must proceed until after they have made a full stop. . . . When a car comes to a full stop before crossing an intersecting line, and another car is approaching at right angles, the first car must not start until the other car has come to a full stop." It appears that the McAllister Street car did not come to a full stop at the intersection, neither did the Fillmore Street car wait for the said McAllister Street car, as the rules required. Of course, an excuse was given for the movement of each, but we cannot say that the jury was bound to accept it as satisfactory.

4. Among the instructions given by the court, the following are severely criticised by appellant: "To entitle plaintiff to recover in this case, it is sufficient to show that Gustave Fritz was a passenger on said southerly bound Fillmore Street car at the time of the collision; that the collision occurred, and that said Gustave Fritz was killed as a result of injuries received in said collision. The law does not impose upon the plaintiff the duty of showing that Gustave Fritz was free from fault, or did not contribute by his own negligence to the injuries which resulted in his death," and, "a carrier of passengers is required to exercise the highest degree of care in their transportation, and is responsible for injuries received by them while in the course of transportation, which might have been avoided by the exercise of such care. If you find that Gustave Fritz was a passenger on said southerly bound Fillmore Street car, with which said easterly bound McAllister Street car collided on said 17th day of December, 1905, and while such passenger, said easterly bound McAllister Street car collided with said southerly bound Fillmore Street car, upon which he was a passenger, then and there, without fault on his part inflicting injuries upon him from which he subsequently died, then the presumption of negligence arises, which throws upon the defendant the burden of showing that the injury was sustained without any negligence on its part,

and in the absence of such evidence, your verdict must be in favor of plaintiff for such sum as under all the circumstances of the case as proven may be just.''

It seems unnecessary to follow counsel in their philosophic discussion of the separate province of the court and of the jury as to questions of law and of fact. Such considerations ought to be pretty well settled by this time. It is sufficient for us to know that the supreme court has held deliberately more than once that the only part of such instructions open at all to criticism is a correct exposition of the law and an accurate statement of the rule of evidence as to the burden of proof in case of injury to a passenger while being transported by a common carrier.

In *McCurrie* v. *Southern Pacific Co.*, 122 Cal. 561, [55 Pac. 324], it is said: ''A *prima facie* case is established when the plaintiff shows that he was injured while being carried as a passenger by the defendant, and that the injury was caused by the manner in which the defendant used or directed some agency or instrumentality under its control. The carrier of passengers is required to exercise the highest degree of care in their transportation, and is responsible for injuries received by them while in the course of transportation which might have been avoided by the exercise of such care. *Hence, when it is shown that the injury to the passenger was caused by the act of the carrier in operating the instrumentalities employed in his business, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on his part.''*

In *Babcock* v. *Los Angeles etc. Co.*, 128 Cal. 173, [60 Pac. 780], the rule is announced as follows: ''When the plaintiff showed that the defendant had assumed to carry him as a passenger upon one of its cars, and that while being so carried he had sustained an injury by reason of the manner in which the car was propelled along its tracks, a *prima facie* case of negligence was established, which in the absence of any other evidence entitled him to a recovery.''

In *Kline* v. *Santa Barbara etc. Ry. Co.*, 150 Cal. 741, [90 Pac. 125], the following instruction was approved: ''Contributory negligence on the part of a passenger cannot be presumed from the mere fact of injury, but must be proved. On the other hand, the proof of an injury to a passenger in

the car of a common carrier casts upon the common carrier the burden of proving that the injury was occasioned by inevitable casualty, or some other cause which human care and foresight could not prevent, or by contributory negligence of the plaintiff, unless the proof on the part of the plaintiff tended to show that the injury was occasioned by the contributory negligence of the passenger or by inevitable casualty, or by some other cause which human care and foresight could not prevent.''

The earlier cases are therein reviewed and, of course, the question involved received thorough consideration in the opinion written by the learned chief justice.

In said instructions there was no attempt to forestall the action of the jury in determining the credibility of the witnesses, nor was there any interference with the right of the jury to pass upon the weight of the whole evidence in the case. The court simply announced a rule of evidence in this class of cases which, by virtue of the decisions, has all the force of a statutory enactment, and which is for the guidance of the jurors in their deliberations.

In the cases cited by appellant, when properly understood, nothing can be found irreconcilable with said instructions, and we deem specific notice of them unnecessary.

5. There was no error in refusing to give the following instruction proposed by defendant: ''If you find from the evidence that the gripman of the McAllister Street car was negligent, but that in spite of such negligence the accident would not have occurred had it not been that certain women ran in front of the Fillmore Street car and forced it to stop in front of the approaching McAllister Street car, then I instruct you that the action of those women was the proximate cause of the accident, and in such case your verdict must be in favor of the defendant, United Railroads of San Francisco.''

Even if it be admitted that the action of the women in alighting from one car and in their confusion passing in front of the said Fillmore Street car was a proximate cause of the injury, this would not exonerate defendant if it was negligent as assumed in the instruction, since its negligence was at least a contributory cause that continued up to the very time of the accident. It is only just to require railroad companies to anticipate such action of pedestrians which is an additional

element of peril likely to be encountered at street crossings. Manifestly, the action of the women was not an operative force that produced the injury, nor can it in any sense be said to have been an independent, intervening cause that relieved defendant of responsibility for its own negligence without which the accident would not have occurred.

The court presented the proper theory as to the women in the following instruction given at the request of the defendant, the only modification—made necessary by the facts—being the substitution of the word "motorman" for "conductor" as to the Fillmore Street car, and "gripman" for "conductor" as to the McAllister Street car: "I instruct you that if you find from the evidence that the car of the United Railroads of San Francisco moving south along Fillmore Street came to a stop at the corner of Fillmore and McAllister streets, that the conductor looked and saw the McAllister Street car approaching, but a sufficient distance away to allow him to pass in safety over the track, and that he did attempt so to pass, but before he had completely passed over the track certain women getting on the car track forced him to stop his car, and that the conductor of the McAllister Street car, without any negligence on his part or any defect in the equipment of his car, attempted to stop his car but was unable to do so before it crashed into the Fillmore Street car, causing the accident which resulted in the death of Gustave Fritz, then I instruct you that no negligence has been shown on the part of the defendant, and your verdict must be in favor of the United Railroads of San Francisco."

6. The court refused an instruction containing the direction: "I charge you that no damages can be given to plaintiff for sorrow or grief or pain of mind or injury to feelings, or for the loss of the society of deceased, or for his pain or suffering or for the loss of his comfort or protection." This seems, however, to have been substantially covered by the court in reading from the decision of the supreme court in *Fox* v. *Oakland Con. St. Ry.*, 118 Cal. 55, [62 Am. St. Rep. 216, 50 Pac. 25]. It was therein stated that "sorrow and mental anguish caused by death are not elements of damage. You cannot award any damage to the plaintiff, as a solace for his wounded feelings, because of the death of his boy."

Other instructions emphasized the fact that ''pecuniary loss'' was the measure of the damages to be recovered by plaintiff. The principle contended for by appellant must have been understood by the jury and, indeed, we think that in the charge all necessary instructions were given for legal guidance.

We discover no prejudicial error in the record. The motion to dismiss the appeal is denied and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 16, 1914.